**Marjorie WALDEN, et al.,
Plaintiffs-Appellants,**

v.

**SEARS, ROEBUCK AND COMPANY,
Defendant-Appellee.**

No. 80–1005.

United States Court of Appeals,
Fifth Circuit.

Unit A

Aug. 28, 1981.

Rehearing Denied Oct. 5, 1981.

---

Diamond J. Pantaze, Dallas, Tex., for plaintiffs-appellants.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Dallas, Tex., for defendant-appellee.

Before BROWN and TATE, Circuit Judges, and SMITH *, District Judge.

JOHN R. BROWN, Circuit Judge:

Plaintiffs, Marjorie Walden, Dwight Le-Blanc, and Claude R. Walden, individually and as next friend of Christopher LeBanc,[1] a minor, appeal the District Court's judgment denying recovery of damages for injuries to the minor resulting from a bicycle accident in strict products liability and negligence action against defendant, Sears. Walden asserts the judgment must be set aside because the District Court erred in (i) excluding Christopher's oral deposition testimony, (ii) admitting testimony of Sears' expert regarding a test conducted two weeks prior to trial, (iii) admitting evidence of Sears' test results, and (iv) failing to apply the plain error doctrine to comments made by Sears' counsel during closing argument. Concluding District Court erred in excluding the deposition testimony, we reverse and remand for a new trial.

## I.

Shortly before Christmas 1970, Dwight LeBlanc purchased a 1970 model number 47723 "Screamer II" bicycle from a Sears retail store in Dallas as a present for his six-year-old son Christopher. The bicycle was equipped with a sixteen-inch front wheel, a twenty-inch rear wheel, and dual caliper hand-operated brakes, but no brake pedals.

Although Christopher already knew how to ride a bicycle, LeBlanc wanted one with pedal brakes because he thought his son

---

* District Judge of the Northern District of Mississippi, sitting by designation. Judge Orma R. Smith was a member of the panel that heard oral arguments, but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. 46(d).

1. Except where necessity dictates otherwise, plaintiffs will be referred to collectively as Walden.

was too small to use handlebar brakes. In making the purchase, however, he was looking for a bike that would last, not a beginner's model that Christopher would outgrow in a year or two.

The salesman who waited on LeBlanc had been in the sporting goods department at this particular Sears store for three years, had been the department manager for eighteen months and was fully familiar with the characteristics of all the bicycles he had for sale. LeBlanc testified the salesman told him the bicycle he purchased had pedal brakes and was suitable for a six-year-old child. The salesman refuted this testimony, explaining, although he could not remember this specific sale among the many which occurred during that busy Christmas season, he would (i) have known whether or not the bicycle had pedal brakes, (ii) not have advised a customer the bicycle had brakes it did not have, and (iii) not have sold a bicycle by the age of the child. Rather, he emphasized, whether a child could use a particular bicycle would depend on the child's size.

At LeBlanc's request, the bicycle was assembled by Sears. After picking the bicycle up, LeBlanc never checked to see if it had pedal brakes since he relied on the claimed representations by the salesman.

Nor was the bike accompanied by any instruction literature indicating its features.

Christopher was given the bicycle on December 27, 1970. LeBlanc gave him no instruction on the use of hand brakes, but claimed his son knew what they were. After one or two other children had ridden the bicycle, Christopher undertook to ride it up and down a street which slopes from west to east. Christopher rode the bicycle fifty feet or so up the hill before turning around and riding downhill. The accident occurred when Christopher, unable to stop the bicycle as he neared an intersection, tried to turn into a driveway and lost his balance. He fell head first on cement, fracturing his skull. Subsequently, he developed pneumococcal meningitis, resulting in impairment of some intellectual brain functions, memory loss, a learning disability, and emotional distress which causes him to have greater difficulty with his memory.

During July 1972, some nineteen months after the accident, Christopher was deposed by Sears. In his deposition, Christopher described how the accident occurred, explaining specifically how he tried to use the hand and foot brakes.[2]

The suit was filed in December 1972. After three agreed motions for continuance

2. Christopher's deposition testimony was as follows:

"Q—* * * Can you tell me what happened when you had your accident?
"A—Yes sir.
"Q—All right. Would you tell me? Tell me how the accident happened.
"A—I was riding,—I was riding down to this street, to the intersection; turned around, went back up this other little street; turned around again, and then I hit—then I hit the curb and I landed into the middle of the driveway, in the middle of my friend's who had been over there and another person's driveway.
"Q—Had you intended to hit the curb or was it just an accident?
"A—It was an accident. I was—I was trying to go up into the grass but I hit the curb.
"Q—Go up into the what?
"A—I was trying to go up into the grass, but I just hit—then I hit the curb.
"Q—*Well, did you try to stop the bicycle before you hit the curb?*

"A—*Yes, sir.*
"Q—*How did you try to stop it?*
"A—*Tried to stop it with the handle bars, but they just went out, they went out.*
"Q—*They went out?*
"A—*And I tried my foot brakes and they didn't work, either. They went out.*
"Q—Let me see if I can understand what it was you intended to do. You say you intended to go up into the grass?
"A—Yes, sir.
          *     *     *     *     *     *
"Q—Now, where is this grass that you were intending to go up into?
"A—These people's yard. I was intending to go up into there, but I thought—but I just hit the curb.
"Q—Well, were you going to get in the yard by going in their driveway or were you going to jump the curb or what?
"A—I was going to go up into their driveway, then go into the grass, turn my wheels and roll into the grass."
(Emphasis added).

and two motions for continuance filed by Walden, trial commenced in October 1979, almost nine years after the accident. At the time of trial, Christopher remember riding the bicycle up the hill, turning around, and coming back, but had no memory at all of the accident.[3] Consequently, Christopher's counsel attempted to have his deposition read into the record. Sears' objected. When the District Court sustained the objection, Walden make an adequate proffer.

The case was submitted to the jury on special interrogatories, accompanied by explanatory instructions. The jury determined (i) the bicycle was not unreasonably dangerous in design or due to lack of an adequate warning, (ii) Sears did not act negligently, but rather (iii) the failure to instruct Christopher the bicycle did not have pedal brakes was the sole proximate cause of the accident. Based on these determinations, the District Court entered judgment in favor of Sears.

## II.

Walden first contends District Court erred in excluding Christopher's deposition testimony because of (i) the losses in both Christopher's long and short term memory, and (ii) the lengthy intervening period before the case went to trial. Walden emphasizes that only Christopher could testify he attempted to actuate both the hand and pedal brakes and that they "went out." Moreover, Walden argues, had Christopher's deposition testimony been admitted,

it would have given greater weight to the testimony of his expert witness.

Sears asserts the District Court properly excluded the deposition evidence because Walden failed to meet any of the requirements of F.R.Civ.P. 32(a) which provide for the admission of deposition testimony. Even if it could be concluded, however, there was error in the District Court's refusal to allow the deposition to be admitted, Sears claims reversal is not required unless the error was really harmful. *See Collins v. Wayne Corporation*, 621 F.2d 777, 782 (5th Cir.1980).

█ The provisions of F.R.Civ.P. 43(a) state the testimony of witnesses shall be in open court unless otherwise provided by the Federal Rules of Evidence. Deposition testimony is admissible under F.R.Evid. 804 when the declarant is unavailable. *See* 4A Moore's Federal Practice ¶ 32.32[2]. As defined by Rule 804, "unavailability" includes situations in which the declarant testifies to a lack of memory of the subject matter of his statement. The crucial factor is not the unavailability of the witness but rather the unavailability of his testimony. 4 Weinstein & Berger, Weinstein's Evidence, ¶ 804(a)[01].

█ Applying these standards we conclude District Court erred in excluding the deposition testimony. At the time of his deposition, Christopher gave a detailed account of his efforts to stop the bicycle by use of both the handle and pedal brakes. Due to the losses to his memory—medically

---

**3.** Christopher was only able to testify at trial generally as follows:

"Q. Do you recall anything at all about the events that lead up to the accident on the bicycle?

"A. Yes sir.

"Q. What do you recall?

"A. I recall riding the bicycle up the street and turning around and coming back down, and that's all I remember.

"Q. Do you recall how you happened to fall from your bicycle?

"A. No, sir.

"Q. Do you recall what part of you hit— what did you hit when you fell?

"A. My face.

"Q. And what did your face hit on the ground?

"A. The concrete.

"Q. Okay. And do you recall anything else—

"A. No sir.

"Q. —about events leading up to your spill from the bicycle?

"A. No, sir.

"Q. Okay. Do you know why you hit the concrete?

"A. No, sir.

"Q. What part of the street pavement is that, do you recall?

"A. Please repeat that.

"Q. Was it a curb? Did you hit a curb or sidewalk?

"A. I don't recall that."

related to the occurrence—such was not the case when he testified at trial, approximately nine years after the accident. Because the deposition testimony was (i) not cumulative of that given at trial, (ii) distinctly and uniquely related to the testimony of other witnesses at trial, and (iii) of such nature it could have affected the jury's responses to the interrogatories, we conclude District Court committed prejudicial error in excluding it. *King v. Gulf Oil Co.*, 581 F.2d 1184 (5th Cir.1978).

Accordingly, we reverse and remand for new trial. Because of this conclusion, we do not find it necessary to evaluate Walden's other claims of error.

REVERSED and REMANDED.