609 So.2d 493 (1992)
Juan David RODRIGUEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 75978.
Supreme Court of Florida.
October 8, 1992.
Rehearing Denied January 7, 1993.
*495 Geoffrey C. Fleck of Friend, Fleck & Gettis, South Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Juan David Rodriguez was convicted of first-degree murder, armed robbery, conspiracy to commit a felony, attempted armed robbery, armed burglary with an assault, aggravated assault, and attempted first-degree murder. The charges which stem from two incidents occurring on consecutive days were tried together. Rodriguez appeals his convictions and the attendant sentences, including a sentence of death imposed in connection with the first-degree murder. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the convictions and sentences.
According to his testimony at trial, on April 22, 1988, Ramon Fernandez was introduced to the defendant at a bail bondman's office by Carlos Sponsa. Sponsa asked Fernandez to give the bondsman the title to his car for a few hours, so Rodriguez could go get some money to pay his bail. Fernandez complied with the request; however, Rodriguez never returned with the money.
On May 13, 1988, Fernandez met with Sponsa and Rodriguez and asked Rodriguez to pay the bondsman so his car would be returned. Rodriguez told Fernandez and Sponsa that he knew where he could get the money and told them to follow him. The two followed Rodriguez, who drove a blue Mazda, to a shopping center. According to Fernandez, Rodriguez went to the door of an auto parts store in the shopping center and talked to a man inside. Rodriguez then came over to their vehicle and told Fernandez and Sponsa to wait in front *496 while he drove around to the back of the shopping center to wait for the owner of the auto parts store. Instead of waiting in the car, Fernandez went up some stairs to the other end of the shopping center, where he saw the owner exit the store through the front door carrying a briefcase. The owner, Abelardo Saladrigas, began walking to the back of the shopping center. When Fernandez could no longer see Saladrigas, he heard two shots. As Fernandez was coming down the stairs, he heard a third shot and then saw Rodriguez chasing the victim with a gun in one hand and the victim's briefcase in the other. Rodriguez was yelling, "Give me the watch; give me the watch." The victim ran behind a car where Rodriguez shot him a fourth time, grabbed the victim's watch and ran to the Mazda. Fernandez also ran to the Mazda and left with the defendant. After fleeing, Rodriguez and Fernandez met Sponsa who had fled as soon as the first shots were fired. Rodriguez opened the briefcase which contained papers, keys, a revolver, and $1,200 in cash. He gave $600 to Sponsa and kept the other $600 and the victim's Rolex watch.
According to Fernandez, Rodriguez then described the events leading up to the murder. Rodriguez explained that he shot Saladrigas first in the leg and then in the stomach because the victim would not surrender his briefcase and watch. After being shot, the victim threw the briefcase at Rodriguez and began screaming. Rodriguez shot him again in an attempt to get the watch. After the victim ran behind a car, Rodriguez shot him the final time and took the watch.
There was also testimony from another witness that pleas of "Don't do this to me, please" were heard coming from the back parking lot prior to the shots being fired.
Jose Arzola, an employee of the murder victim, testified that he was the man who spoke to the defendant at the front door of the auto parts store. Although Rodriguez's appearance had changed, Arzola made an in-court identification of him. Arzola further testified that he had seen Rodriguez at the shopping center on two or three occasions prior to the murder, standing on the side of the stairwell next to the entrance to the auto parts store.
Several witnesses testified concerning Saladrigas' dying declarations. A woman who worked in the shopping center testified that at approximately 7:00 p.m. on the day of the murder, she heard an argument in the back lot and heard four muffled gunshots. According to the witness, a few seconds after hearing a scream, Saladrigas came to the front of the shopping center and fell near the door to her shop. When she went to him, Saladrigas told her that he had been shot by a Mulatto, that he had been robbed of his watch and purse, and that they had left in a blue Mazda.
The victim's sister-in-law testified that when she arrived at the scene, Saladrigas told her, "They robbed me, and they take my keys from the business. They take my watch and my briefcase." When she asked him if he knew the robbers, he told her, "No, but I've seen them. They are two Mulattos." He also told her, "They go away in a blue Mazda."
Officer Jans testified that he overheard Saladrigas describe the shooting. According to the officer, Saladrigas said a couple of Mulatto males robbed him in the back parking lot. The man who shot him was taller than average, 5'10" or 5'11," and very skinny. The robbers left in a small blue car which was either a Mazda or a Toyota. They took his briefcase and Rolex watch. As he approached his car, they tried to get his briefcase. There was a struggle, and he was shot a couple of times.
Saladrigas died a short time after being taken to the hospital. According to the medical examiner, although there were six separate gunshot wounds on the body, these wounds were consistent with four separate projectiles having struck the victim. The victim had two wounds to the right arm; one wound to the upper left chest; one wound one inch above the right knee; and two wounds to the right chest, one of which was fatal.
Francisco Reyes, who met Rodriguez in the county jail prior to trial, testified that *497 Rodriguez told him that Fernandez was a "snitch" and because of him Rodriguez was "facing the chair." According to Reyes, Rodriguez also told him Fernandez could not have seen him commit the murder because he had told him to wait around the corner and if Rodriguez could "get rid" of Fernandez, "they would never know he was the one that killed or murdered." Reyes also testified that the defendant offered to pay him $3,000 if Reyes would testify that Fernandez confessed to Reyes that he committed the murder.
Testimony concerning the attempted home invasion came primarily from Fernandez and another of the participants in that incident. According to Fernandez, the day after the murder, he, the defendant, and several other young men went to a residence intending to invade it and rob the occupants who according to Sponsa had large amounts of drugs and cash. Fernandez and two of the men went in one vehicle; Rodriguez and the other two went in a separate vehicle. Fernandez and the two men who rode with him went to the door. When a man answered, the three attempted to push their way in. However, when the man's wife brought him a gun, the three ran from the house. The attempted robbery victim shot at the three and one of them returned fire. Although Fernandez was carrying the murder victim's revolver during the attempted home invasion, he did not fire it. Fernandez dropped the revolver on the front lawn while fleeing.
Sergio Valdez, a participant in the attempted home invasion, who rode to the scene with the defendant, also testified. Valdez' account of the attempted home invasion was generally consistent with that of Fernandez. He explained that he, Rodriguez, and another man circled the residence while the other three men went to the door. According to Valdez, Rodriguez told him it was their job to tie up the people in the house and search for money and drugs after the others gained entry. Valdez also testified that while in route to the residence, Rodriguez admitted that he "had done a job" at an auto parts store the day before, and that he had stolen a thousand dollars and the Rolex watch he was wearing from the victim.
Three weeks after the attempted home invasion, Fernandez was arrested. He confessed to his involvement in both crimes and told police that Rodriguez shot the victim at the auto parts store. Rodriguez was arrested and ultimately charged in a single indictment with first-degree murder and the other offenses stemming from the robbery/murder and the attempted home invasion.
Rodriguez was found guilty of all charges which were tried together. By a vote of twelve to zero the jury recommended that he be sentenced to death in connection with the Saladrigas murder. The court followed this recommendation, finding three aggravating factors: 1) prior conviction of violent felony; 2) the murder was committed during a robbery and for financial gain; and 3) the murder was especially heinous, atrocious, or cruel, and one nonstatutory mitigating factor: Rodriguez had a good marriage and family life.

GUILT
Rodriguez raises the following four claims in connection with the guilt phase of his trial: 1) it was error to compel him to proceed without the presence of a defense witness and to refuse to permit him to introduce that witness's prior deposition testimony; 2) it was fundamental error to conduct a joint trial for the first-degree murder and the charges stemming from the attempted home invasion; 3) it was error to admit the victim's sister-in-law's identification testimony; and 4) inadmissible hearsay testimony was introduced to improperly bolster the testimony of the State's chief witnesses.
As his first claim, Rodriguez contends that it was error to require him to proceed without the presence of a subpoenaed defense witness and to exclude that witness's deposition testimony. Some fourteen months after the murder, defense counsel deposed Jose Montalvo, who had been listed on the State's discovery list as someone having knowledge of the offense. Although in statements made to the police *498 and the prosecutor soon after the shooting Mr. Montalvo had stated that the victim gave him no description of the assailant, in the deposition, Mr. Montalvo stated that he asked the victim who shot him, and the victim said a "little fat one." This description was inconsistent with the dying declaration overheard by Officer Jans that the assailant was tall and thin like the defendant.
Although Mr. Montalvo received a standby subpoena for Monday, January 22, 1990, defense counsel did not attempt to contact him until Monday, January 29, 1990. When no one contacted the witness on the week of the 22nd, he assumed the case had been postponed again and that he would not be needed. Therefore, he left town on January 28.
When Mr. Montalvo could not be found on January 29, defense counsel requested that his deposition testimony be admitted into evidence. The state objected, arguing that the deposition was hearsay and that Mr. Montalvo had not been listed as a defense witness in accordance with Florida Rule of Criminal Procedure 3.220(b)(3) (currently Florida Rule of Criminal Procedure 3.220(d)(1)). Defense counsel argued that the deposition testimony could be admitted into evidence pursuant to section 90.804(2)(a), Florida Statutes (1989). That section provides in pertinent part that where the declarant is unavailable
[t]estimony given ... in a deposition taken in compliance with the law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination
is excluded from the definition of hearsay.
Relying on this Court's decision in State v. James, 402 So.2d 1169 (Fla. 1981), wherein we held that discovery depositions were not admissible as substantive evidence in criminal cases absent compliance with Florida Rule of Criminal Procedure 3.190(j) which governs the taking of depositions to perpetuate testimony, the trial court refused to admit the deposition. Defense counsel then requested a short continuance to obtain Mr. Montalvo's presence. When unable to produce Mr. Montalvo the following day, counsel renewed his request to utilize the prior deposition testimony. The court again denied the request.
We are presented with the question of whether a deposition is admissible as substantive evidence, under section 90.804(2)(a) of the evidence code, when, at the time of its taking, opposing counsel is not alerted by compliance with Rule of Criminal Procedure 3.190(j) that the deposition may be used at trial. We hold that it is not. Accord State v. James; Campos v. State, 489 So.2d 1238 (Fla. 3d DCA 1986) (discovery deposition that qualifies as a hearsay exception under section 90.804(2)(a) is not admissible as substantive evidence unless it qualifies for such admission under the criminal rules of procedure); Jackson v. State, 453 So.2d 456 (Fla. 4th DCA 1984) (same); Terrell v. State, 407 So.2d 1039 (Fla. 1st DCA 1981) (same).
It is generally accepted that when an exception to the rule excluding depositions as hearsay[1] is not found in the Rules of Civil Procedure, the evidence code may provide such an exception in a civil proceeding. See, e.g., Dinter v. Brewer, 420 So.2d 932, 934 (Fla. 3rd DCA 1982); Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242, 259 (Fla. 1st DCA 1984), review denied, 467 So.2d 999 (Fla. 1985). However, a similar result is not warranted in a criminal case. This is so because greater latitude for the use of depositions in civil cases exists by virtue of Rule of Civil Procedure 1.330 which is much broader than the Rules of Criminal Procedure that provide for the use of deposition testimony.
Rule of Criminal Procedure 3.220(h), as adopted by this Court, allows discovery depositions *499 to be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness but makes no provision for their use as substantive evidence. If it had been our intent to allow such use, the rule would so state. Rather, Rule of Criminal Procedure 3.190(j) was enacted to assure that both parties have an opportunity and motive to fully develop deposition testimony before it can be used as substantive evidence in a criminal case.
The holding in State v. James that discovery depositions are not admissible as substantive evidence absent compliance with Rule 3.190(j) was in no way modified by the adoption of section 90.804(2)(a).[2] In fact, the necessity of meeting the procedural requirements for perpetuating testimony before a deposition is admissible as substantive evidence is recognized in section 90.804(2)(a) by the express requirement that the deposition must be "taken in compliance with law." Accord Terrell v. State, 407 So.2d at 1041. Accordingly, the deposition testimony was properly excluded in this case.
We also find no abuse of discretion by the trial court in failing to continue the trial until the witness could be procured. Mr. Montalvo had not been listed on the defense witness list as required under Florida Rule of Criminal Procedure 3.220(b)(3) and it does not appear that counsel sought a further continuance when he was unable to produce the witness on January 30. Moreover, even if it was error for the trial court to fail to continue the trial until Mr. Montalvo's attendance could be secured, on this record the error would be harmless beyond a reasonable doubt.
We also reject Rodriguez's challenge to the fact that he was tried jointly for the offenses stemming from the Saladrigas murder and the attempted home invasion. Pursuant to Florida Rule of Criminal Procedure 3.150(a), Rodriguez was charged in a single indictment with the offenses stemming from both incidents. Although he successfully moved for severance of defendants, Rodriguez never sought severance of offenses, pursuant to Florida Rule of Criminal Procedure 3.152(a)(1). Because we cannot agree that the trial court's failure to sua sponte sever the offenses constituted fundamental error, the issue is not preserved for appeal.
Rodriguez's third claim, that it was error to permit the victim's sister-in-law to offer identification testimony due to the "inherently inflammatory" nature of such testimony, was not preserved by specific objection. The only objection to the identification testimony was based on relevancy. It is well settled that the specific legal ground upon which a claim is based must be raised at trial and a claim different than that raised below will not be heard on appeal. See, e.g., Bertolotti v. State, 565 So.2d 1343, 1345 (Fla. 1990); Craig v. State, 510 So.2d 857, 864 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988).
The final claim raised in connection with the guilt phase of this trial is precipitated by the fact that an extraordinary amount of testimony by law enforcement officers concerning prior consistent statements made by various state witnesses was presented to the jury. The defendant most strenuously challenges the admission of testimony recounting prior consistent statements made by his accomplices, Ramon Fernandez and Sergio Valdez.
It is well established that prior consistent statements are generally inadmissible to corroborate or bolster a witness' trial testimony. See, e.g., Jackson v. State, 498 So.2d 906, 909 (Fla. 1986); Parker v. State, 476 So.2d 134, 137 (Fla. 1985); Van Gallon v. State, 50 So.2d 882 (Fla. 1951); Carroll v. State, 497 So.2d 253, 256 (Fla. 3d DCA 1985), review denied, 511 So.2d 297 (1987); Perez v. State, 371 So.2d 714, 716-17 (Fla. 2d DCA 1979); Allison v. *500 State, 162 So.2d 922, 924 (Fla. 1st DCA 1964); see also Charles W. Ehrhardt, Florida Evidence § 801.8 (1992). Moreover, because prior consistent statements are usually hearsay, they are inadmissible as substantive evidence unless they qualify under an exception to the rule excluding hearsay. Ehrhardt, Florida Evidence § 801.8.
The prior statements of Fernandez and Valdez were properly admitted under section 90.801(2)(b), Florida Statutes (1989), which excludes from the definition of hearsay the prior consistent statement of a witness who testifies at trial and is subject to cross-examination concerning that statement when the statement is offered to "rebut an express or implied charge ... of improper influence, motive, or recent fabrication." Defense counsel's references to plea agreements with the state during cross-examination of both of these witnesses were sufficient to create an inference of improper motive to fabricate. See Stewart v. State, 558 So.2d 416, 419 (Fla. 1990); Kelley v. State, 486 So.2d 578, 583 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986); Dufour v. State, 495 So.2d 154, 160 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987). Accordingly, because the statements in question were given prior to the plea negotiations and therefore prior to the existence of both witnesses' motive to fabricate they were properly admitted. Dufour v. State, 495 So.2d at 160; Wilson v. State, 434 So.2d 59 (Fla. 1st DCA 1983).
The State concedes that the testimony of Detective Castillo recounting the information gathered by police from witnesses concerning Mr. Saladrigas' dying declarations, as well as the detective's testimony concerning Jose Arzola's description of the man who came to the auto parts store just prior to the murder, was hearsay for which there was no valid exception. Although we find the admission of this testimony harmless beyond a reasonable doubt, Parker v. State, 476 So.2d at 137, we take this opportunity to caution trial courts to guard against allowing the jury to hear prior consistent statements which are not properly admissible. Particular care must be taken to avoid such testimony by law enforcement officers. As noted by the district courts:
The rationale prohibiting the use of prior consistent statements is to prevent "putting a cloak of credibility" on the witness's testimony. When a police officer, who is generally regarded by the jury as disinterested and objective and therefore highly credible, is the corroborating witness, the danger of improperly influencing the jury becomes particularly grave.
Carroll v. State, 497 So.2d at 256-57 (quoting Perez v. State, 371 So.2d at 716-17).
Rodriguez does not challenge the sufficiency of the evidence. However, our review of the record reveals substantial competent evidence to support his convictions.

PENALTY
Rodriguez raises the following six challenges in connection with his death sentence: 1) the death penalty is disproportionate in this case; 2) the prosecutor's comments on the defendant's demeanor off the witness stand rendered the sentencing proceedings unfair; 3) the homicide was not heinous, atrocious, or cruel; 4) the sentencing order is deficient and reflects that the trial court failed to consider certain mitigating factors; 5) the trial court considered the impassioned pleas of family members, contrary to Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), overruled by Payne v. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); and 6) Florida's death penalty statute is unconstitutional. We reject each of these claims and find that only the first three merit further discussion.
First, we address claim 2 dealing with improper comments by the prosecutor. During argument on the aggravating factor of heinous, atrocious, or cruel, the prosecutor made the following comment:
This is torture. And who inflicted it? This man with his eyes closed sleeping over here.
Defense objected, moved for a mistrial and pointed out that the defendant was "listening *501 to the interpreter," rather than sleeping. The trial court denied the motion, stating that "Whether [the defendant] was sleeping or not is up to the jury to decide."
As the State concedes, the prosecutor's reference to the fact that the defendant appeared to be sleeping during closing argument was clearly improper. The defendant's demeanor off the witness stand is not a proper subject for argument and in some cases may be unduly prejudicial. Pope v. Wainwright, 496 So.2d 798, 802 (Fla. 1986), cert. denied, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). However, under the circumstances, reversal is not warranted.
Defense counsel failed to request a curative instruction, see Ferguson v. State, 417 So.2d 639, 641 (Fla. 1982) (proper procedure where prosecution makes improper comment during closing argument is to request an instruction to jury to disregard the comment), choosing instead to explain to the jury that the defendant was merely listening to the interpreter. Moreover, the misconduct was not so egregious as to taint the validity of the jury's recommendation in light of the aggravating factors present. See Bertolotti v. State, 476 So.2d 130 (Fla. 1985) (prosecutorial misconduct must be truly egregious to warrant vacating death sentence); Jackson v. State, 522 So.2d 802 (Fla.) (same), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988).
Next, we reject Rodriguez's claim that this murder was the result of a simple shooting and therefore cannot be considered heinous, atrocious, or cruel under section 921.141(5)(h), Florida Statutes (1989). See Lewis v. State, 398 So.2d 432, 438 (Fla. 1981) ("murder by shooting, when it is ordinary in the sense that it is not set apart from the norm of premeditated murders, is as a matter of law not heinous, atrocious, or cruel"). After the shooting, Rodriguez bragged that when Mr. Saladrigas would not turn over his belongings, Rodriguez shot the man twice, first in the knee and then in the stomach. As his victim ran, pleading for his life, Rodriguez shot him again because Saladrigas still had not given up his watch. After being wounded, Mr. Saladrigas ran over 200 feet with his attacker in pursuit only to be shot a fourth time behind a car where he sought cover. These facts set this murder apart from the norm of capital felonies and support the conclusion that Rodriguez enjoyed or was utterly indifferent to the suffering of his victim. See Shere v. State, 579 So.2d 86 (Fla. 1991); Cheshire v. State, 568 So.2d 908 (Fla. 1990); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
Finally, we have compared this case with other death penalty cases and find that death is proportionately warranted. Accordingly, having found no reversible error, we affirm the convictions and sentences, including the sentence of death.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion.
KOGAN, Justice, concurring in part and dissenting in part.
I concur in all portions of the majority opinion except that portion which holds that a discovery deposition is not admissible as substantive evidence unless the testimony is perpetuated in accordance with Rule of Criminal Procedure 3.190(j).
According to federal precedent, exceptions to the rule excluding depositions as hearsay are found both in the rules of civil and criminal procedure and in the rules of evidence. See 11 James W. Moore & Helen I. Bendix, Moore's Federal Practice § 804.04[1], at VIII-262 (2d ed. 1989); Charles W. Ehrhardt, Florida Evidence § 804.2, at 668-69 (1992); see also Walden v. Sears, Roebuck & Co., 654 F.2d 443, 446 (5th Cir.1981) (deposition testimony is admissible under Federal Rule of Evidence 804 when the declarant is unavailable even if it would not be admissible under rules of procedure); United States v. Steele, 685 F.2d 793, 808 (3d Cir.) (deposition testimony was admissible against criminal defendant *502 under Federal Rule of Evidence 804(b)(1)), cert. denied, 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982). I see no reason why the same should not hold true under Florida's procedural and evidentiary rules. Accord Ehrhardt, Florida Evidence § 804.2, at 670-71 (1992).
It is generally accepted that when a deposition is not admissible under the Florida Rules of Civil Procedure it may still be offered as substantive evidence under section 90.804(2)(a), Florida Statutes (1989), if the requirements of that exception are met. See Dinter v. Brewer, 420 So.2d 932, 934 (Fla. 3rd DCA 1982) (when rules of civil procedure do not provide exception to rule excluding depositions as hearsay, must look to evidence code for exception); Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242, 259 (Fla. 1st DCA 1984) (when deposition meets the requirements of either the rule of civil procedure or the evidentiary rule, it is admissible), review denied, 467 So.2d 999 (Fla. 1985); see also Ehrhardt, Florida Evidence § 804.2, at 669-70. I would apply the same rule in criminal cases. Under the plain language of section 90.804(2)(a), the exception to the hearsay rule recognized therein is applicable in criminal as well as civil cases. It is illogical to think that compliance with Rule of Criminal Procedure 3.190(j) was intended to be a prerequisite to admission of depositions under section 90.804(2)(a). If such were the case, there would be no need to make section 90.804(2)(a) applicable in criminal proceedings since depositions taken in compliance with rule 3.190(j) would be admissible under the procedural rule. Moreover, procedural rules, such as rule 3.190(j), that act as rules of evidence were superseded to the extent they are in conflict with the Evidence Code. In re Fla. Evidence Code, 372 So.2d 1369 (Fla.), clarified, 376 So.2d 1161 (Fla. 1979).
This Court's pre-evidence code holding in State v. James, 402 So.2d 1169 (Fla. 1981), does not mandate a contrary conclusion. James dealt exclusively with admission of discovery depositions under Florida Rule of Criminal Procedure 3.220(d) (current rule 3.220(h)(1)) which provides that discovery depositions "may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness," but does not provide for the use of discovery depositions as substantive evidence. The holding in James was based on the fact that the procedural rule at issue did not provide an exception to the general rule excluding the use of deposition testimony as substantive evidence. That decision does not stand for the proposition that discovery depositions are admissible as substantive evidence in a criminal case only if they are admissible for that purpose under the Rules of Criminal Procedure.
Likewise, our decisions in State v. Clark, No. 77,461, 1992 WL 457503 (Fla. Sept. 24, 1992); and State v. Basiliere, 353 So.2d 820 (Fla. 1977), do not preclude admission of discovery depositions in a case such as this. Those cases simply stand for the proposition that discovery depositions are not admissible as substantive evidence where a defendant was not present at the deposition and had no notice that the deposition testimony could be used at trial. This is because a defendant has a basic constitutional right to be present when evidence is presented and to confront and cross-examine the witnesses against him under the Sixth Amendment to the United States Constitution and article I, section 16 of the Florida Constitution. State v. Clark, slip op. at 2-3; see also Brown v. State, 471 So.2d 6 (Fla. 1985) (State's failure to notify defendant of deposition and produce him at the deposition, in accordance with rule 3.190(j)(3), deprived him of constitutional right to confront and cross-examine the witnesses against him).
The fact that it may be difficult for the proponent of discovery deposition testimony to establish that the party against whom the testimony is offered, "had similar motive to develop the testimony by direct, cross, or redirect examination," as required by section 90.804(2)(a)[3] does not warrant a blanket rule that discovery depositions *503 may never be used as substantive evidence. Because it cannot be said as a matter of law that the motive to develop testimony during a discovery deposition will never be similar to the motive during trial,[4] this determination should be made by the trial court on a case-by-case basis. Proper application of the similar-motive requirement together with the safeguards provided by the confrontation clauses of the United States and Florida Constitutions would serve to militate against abuses in the use of discovery depositions as substantive evidence in cases such as this.
Accordingly, I would hold that, where the confrontation rights of the defendant will not be compromised, if the declarant is unavailable and the other requirements of section 90.804(2)(a) are met a discovery deposition is admissible as substantive evidence under that exception to the hearsay rule even if the deposition would not be admissible under the Rules of Criminal Procedure.
However, in this case, I agree with the State that Rodriguez has failed to establish that the State had similar motive to develop the deposition testimony. As noted in the majority opinion, prior to the deposition, Mr. Montalvo had stated to both the police and the prosecutor that the victim had given no description of his assailant. The only notice that the State was given was that the defense was going to depose Mr. Montalvo, one of the witnesses included on the State's discovery list. At no time did the defense list Mr. Montalvo as a person "whom defense counsel expects to call as a witness at trial" pursuant to rule 3.220(b)(3). Under the circumstances, the State had no reason to rigorously prepare for or pursue questioning of the witness.[5]
I also agree that Rodriguez has failed to establish that Mr. Montalvo was "unavailable" under section 90.804(1)(e), Florida Statutes (1989).[6] Mr. Montalvo cannot be considered "unavailable" under section 90.804(1)(e) because the defense failed to establish that a diligent attempt to secure the witness' attendance had been made. See Spicer v. Metropolitan Dade County, 458 So.2d 792, 795 (Fla. 3d DCA 1984) (proponent of former testimony must establish that it took reasonable steps to procure the witness); McClain v. State, 411 So.2d 316, 317 (Fla. 3d DCA 1982) (proponent of former testimony must establish what steps it took to secure appearance of witness). Although counsel served Mr. Montalvo with a standby subpoena for January 22, counsel took no other reasonable steps to ensure the witness's attendance. In fact, it is undisputed that counsel never attempted to contact the witness until January 29, the day after the witness had left town believing that the trial had been postponed.
Therefore, although I disagree with the reasoning employed by the majority, I agree that the deposition testimony was properly excluded in this case.
NOTES
[1] When a party seeks to offer a deposition as substantive evidence, it is generally considered inadmissible hearsay. See section 90.801(1)(c), Florida Statutes (1989) ("Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").
[2] We have requested that the Rules of Criminal Procedure Committee consider and make recommendations as to whether the Criminal Rules should be amended to provide for the use of discovery depositions as substantive evidence subject to certain safeguards which would be provided in the rules.
[3] See Jackson v. State, 453 So.2d 456 (Fla. 4th DCA 1984) (recognizing that State may not have similar motive to develop testimony where deposition was not taken to perpetuate testimony).
[4] In fact, the State concedes that under certain circumstances it might have a similar motive to develop discovery deposition testimony. As an example, the State suggests that its motive to develop testimony during a discovery deposition would likely be the same as at trial where the prosecutor deposes a witness on the defense's witness list whom the prosecutor has reason to believe has information damaging to the State's case.
[5] Where, during a discovery deposition conducted by the defense, a witness unexpectedly gives testimony damaging to the State's case, the State would have at least two options that reasonably could lessen its motive to cross-examine. One option would be to depose the witness after he or she is listed as a defense witness. The other would be to wait to cross-examine and impeach the witness at trial with prior inconsistent statements. See Jackson v. State, 453 So.2d at 457.
[6] Section 90.804(1)(e) provides that a declarant is unavailable if he

[i]s absent from the hearing, and the proponent of his statement has been unable to procure his attendance or testimony by process or other reasonable means.
(Emphasis added.)