PER CURIAM.
The state appeals the trial court’s pretrial order granting the defendant’s motion to suppress or quash his seizure and arrest. We reverse and remand, as we conclude the trial court erred in finding that the arresting police officers lacked reasonable suspicion or probable cause to seize and arrest the defendant.
At the hearing on the defendant’s motion, Officer Tom Redpath testified that he is part of the tactical enforcement unit at the Pompano Beach Police Department, with training in street level drug enforcement. He took a course in narcotics identification, and has three years’ experience in dealing with controlled substances, having arrested over 100 people in the past year alone. He stated that based on his experience and training, he knows that cocaine must reach a higher temperature than tobacco before it starts to burn, so a flame must be held to it longer than to a normal cigarette in order to light it; and once it does catch fire, it flares up two to three inches higher than a normal cigarette would.
Officer Redpath testified that on September 11, 1992, at 7:07 p.m., when it was still light outside, he and his partner, Officer Uraro, were patrolling a high drug use/trafficking area, where they had previously made numerous drug arrests. When they pulled in between two buildings, Officer Redpath saw the defendant, whom he had previously seen quite a few times, walking towards an area where people often concealed themselves to sell and use controlled substances.
The officers pulled into a parking lot and watched the defendant from about fifteen feet away, noticing that his mannerisms were suspicious, as if he were trying to conceal something. They then saw him place a cigarette with a twisted end in his mouth and light it. The officer stated:
He held a butane lighter to the cigarette, the flame went up about two or three inches. He held the lighter there. He didn’t remove it right away which isn’t normal for cigarette smoking. He was in the corner trying to, you know, conceal himself the best he could.
The officer said that he thought the defendant was smoking crack cocaine because, inter alia:
It was a normal cigarette except the end — Normally -what they do, if they can’t fit the rock in, depending on the size, they’ll take a little bit of tobacco out of the end, stick the rock in as best they can and they’ll pinch off the end, roll it up to close it so the crack cocaine doesn’t fall out. And this occasion that’s what it appeared to be.
The officer also said that he had commonly seen people smoking crack cocaine that way, because it was easier to avoid detection in that manner.
Officer Redpath stated that he and his partner walked up to the defendant, as the defendant continued doing what he was doing. The defendant held the lighter to the end of the cigarette with the flame flaring up about two or three inches in the air, and he continued holding the lighter to the cigarette for the amount of time it took the officers to walk from the car to his side (a few seconds). The officer testified that it is not normal to hold a lighter on tobacco that long, but it is not unusual to hold it on crack cocaine that long. He also stated that a flame would not “jump” when hitting tobacco like it did when it hit the defendant’s cigarette.
As the officers approached the defendant, wearing their gray vests with badges around their necks and wearing gun belts, the defendant saw them, whereupon he turned and broke the cigarette in half and started to separate his hands, “as if he was *1133 trying to get rid of it” by throwing it to the ground. As Officer Uraro grabbed the front half of the cigarette with the suspected cocaine in it, the defendant shoved Officer Uraro back, then slapped the officer’s hand, knocking the piece of the cigarette to the ground, where it fell among trash and was not recovered.
After Officer Uraro was shoved, Officer Redpath put his hand on the defendant so he couldn’t run, but the defendant was still able to knock the front portion of the cigarette from Officer Uraro’s hand. The defendant did throw the other portion of the cigarette to the ground. He also struggled and swung his arms, but the officers subdued him by using pepper mace, then arrested him. Thereafter, the defendant spontaneously stated, “I didn’t have no dope, just marijuana. I don’t smoke no rock.”
Officer Redpath admitted that prior to seeing the defendant he had no information that the defendant was engaging in criminal activity, that he did not see the defendant putting anything inside the cigarette and did not see him twist the end of the cigarette. Based on his knowledge and experience and what he saw, however, the officer believed that the defendant was smoking crack cocaine, so he intended to detain him initially, then place him under arrest.
After the officer’s testimony the defense argued that the officers had no probable cause to arrest the defendant or even reasonable suspicion to detain him, and the state argued to the contrary. The court initially reserved ruling, but granted the motion the next day, stating:
Basically what happened was two undercover police officers from Pompano were in an area of what they believed to be a high drug neighborhood. They saw an individual, the Defendant, Mr. Husky, standing there lighting a cigarette which they believed because of the length of time that he held the cigarette lighter lit to the cigarette that, in fact, it was consistent with smoking — with lighting a cigarette containing crack cocaine as opposed to a cigarette containing tobacco and that was the only basis upon which they approached the Defendant.
I find it was not a consensual encounter — street encounter because of the officers walked right up to the Defendant and one of the officers ripped the cigarette out of his mouth immediately or at least half the cigarette out of his mouth immediately and that, in turn, precipitated the Defendant to push one of the officers, and ultimately the Defendant was arrested for resisting an officer without violence.
(Emphasis added).
The court then called the jury in and told them that the case was “over with” because he had granted a motion to suppress, leaving the state with no evidence available to introduce at trial.
On November 10, 1992, the court entered a handwritten order granting the defendant’s motion to suppress/quash arrest “[bjecause officer Redpath/Urraro [sic] did not have reasonable suspicion or probable cause to seize the [defendant]. The facts also indicate that this was not a police-citizen consensual encounter because officer Urraro [sic] approached the [defendant] and immediately seized a cigarette from the [defendant’s] person.”
We agree with the trial court that this was not a consensual encounter between the officers and the defendant because a consensual encounter involves only minimal police contact, no seizure, and the suspect is free to go during the encounter. See State v. DeCosey, 596 So.2d 149 (Fla. 2d DCA1992). Otherwise, however, we disagree with the trial court’s findings.
The trial court concluded that the only fact supporting the officers’ investigation of the defendant was the length of time that the defendant held the lighter to the cigarette. Accordingly, the trial court overlooked the facts that the defendant was in a high drug crime area, that he was acting as if he were trying to conceal something, that the cigarette had a twisted end, that the substance in the cigarette flared up two to three inches from the cigarette when lighted, and that based on the special *1134 ized experience and training of the officers, the cigarette itself and the defendant’s actions indicated that he was smoking crack cocaine. The trial court also recalled the testimony incorrectly, concluding that one of the officers walked up to the defendant and ripped the cigarette out of his mouth. In fact, the record shows that the defendant, upon seeing the officers approach, broke the cigarette in two pieces and separated his hands as if to throw the pieces away; and as Officer Uraro grabbed the front piece of the cigarette that was in the defendant’s hand, the defendant shoved the officer away then knocked the front piece of the cigarette from the officer’s hand.
This court, in discussing probable cause, has stated:
Probable cause exists if a reasonable man, having the specialized training of a police officer, in reviewing the facts known to him, would consider that a felony is being or has been committed by the person under suspicion. In dealing with probable cause as the very name implies, the process does not deal with certainties but with probabilities. These are not technical niceties. They are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.
Schmitt v. State, 563 So.2d 1095, 1098 (Fla. 4th DCA1990) (emphasis original) (citations omitted), quashed in part on other grounds, 590 So.2d 404 (Fla.1991), cert. denied, — U.S.-, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992). See also State v. Flonory, 566 So.2d 310 (Fla. 5th DCA1990), rev. denied, 576 So.2d 286 (Fla.1991); State v. McCormack, 517 So.2d 73 (Fla. 3d DCA1987); Thornton v. State, 559 So.2d 438 (Fla. 1st DCA1990). Additionally, in P.L.R. v. State, 455 So.2d 363 (Fla.1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985), the Supreme Court held that an officer’s observation, in a high narcotics trafficking area, of a manila envelope of a type often used to hold marijuana, in the shirt pocket of the defendant, provided probable cause to arrest the defendant and seize the envelope.
GLICKSTEIN, C.J., LETTS, J., and WALDEN, JAMES H., Senior Judge, concur.