981 So.2d 484 (2008)
Randell C. LEIGHTY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-2686.
District Court of Appeal of Florida, Fourth District.
March 5, 2008.
Rehearing Denied June 3, 2008.
*485 Barbara J. Scheffer and Mitchell J. Beers of Mitchell J. Beers, P.A., Palm Beach Gardens, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Senior Assistant Attorney General, West Palm Beach, for appellee.
CONNER, BURTON C, Associate Judge.
Randell C. Leighty ("Leighty") appeals the judgment and sentences entered after he was found guilty by jury trial of three counts of first degree murder. The victims, Maria Ines Agarita, Luz Marina Rincon, and Amanda Rodriguez, were found shot to death next to each other on September 26, 2002, in the kitchen of El Rinconcito Venezolano Restaurant ("El Rinconcito" or the restaurant) where they worked. Leighty was also found guilty of robbery with a firearm. He and his co-defendant, Lloyd Thomas Johnson ("Johnson") were tried at the same time with two different juries. Johnson was convicted of the same offenses as Leighty.
On appeal, Leighty raised five issues. We affirm three of the five issues without discussion. We address two issues: whether the trial court erred in denying Leighty's motion to suppress his pre-trial statement to law enforcement, and in denying his motion to use a witness deposition in lieu of live testimony.

Denial of the Motion to Suppress
On appeal, Leighty attacks the denial of his motion to suppress on the contention that law enforcement did not have probable cause to arrest him, and the illegal arrest tainted the statement he gave law enforcement as fruit of the poisonous tree. More specifically, Leighty contends that the trial court erred in finding probable cause because the only evidence law enforcement had to connect Leighty to the crime at the time of his arrest was the statement of his co-defendant accusing Leighty of being the shooter.
The trial court entered a written order denying the motion to suppress,[1] and it appears from the findings of fact in the order that the only evidence which connected Leighty to the robbery and the murders was Johnson's accusation that Leighty committed the robbery and the murders.
The standard of appellate review for the denial of a motion to suppress statements is de novo. See Harris v. State, 761 So.2d 1186 (Fla. 4th DCA 2000). The trial court's decision is presumed correct on appeal, and the appellate court must accept the trial court's determination of the facts. Id. at 1187; Curtis v. State, 748 So.2d 370 (Fla. 4th DCA 2000). Appellate courts engage in a de novo review of mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendments. See Perez v. State, 919 So.2d 347 (Fla.2005).
Leighty argues on appeal that the trial court erred in its determination that there was probable cause as to him because the only evidence linking him to the crime was the word of a co-defendant who had already confessed to the crime. Leighty relies on Kaupp v. Texas, 538 U.S. 626, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003), as support for his argument. However, Leighty's reliance on Kaupp is misplaced because it is factually distinguishable. In Kaupp there was no issue on appeal concerning the sufficiency of probable cause *486 because, for whatever reason, the state conceded the officers did not have probable cause to arrest the defendant at the time he was removed from his home and taken to the station. In footnote one of the opinion, the Supreme Court observed "[a]s the trial court later explained, the detectives had no evidence or motive to corroborate the brother's [co-defendant's] allegations of Kaupp's involvement." Kaupp, 123 S.Ct. at 1845 n. 1. In fact, in Kaupp, law enforcement had reason not to believe the co-defendant's confession implicating Kaupp because the co-defendant had failed two polygraph examinations prior to giving his confession, and Kaupp had passed his polygraph examination prior to the co-defendant's confession. The issue decided by the Supreme Court in Kaupp is whether Kaupp was under arrest at the time of questioning, despite the lower court decision that he was not.
In discussing probable cause, this court has stated:
Probable cause exists if a reasonable man, having the specialized training of a police officer, in reviewing the facts known to him, would consider that a felony is being or has been committed by the person under suspicion. In dealing with probable cause as the very name implies, the process does not deal with certainties but with probabilities. These are not technical niceties. They are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.
State v. Husky, 617 So.2d 1131, 1134 (Fla. 4th DCA 1993). Probable cause "must be judged not with clinical detachment, but with a common sense view to the realities of normal life." Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir.1997). The Eleventh Circuit's opinion in Craig specifically addressed the issue of a co-defendant's statement establishing probable cause to arrest a defendant when the co-defendant's statement is the only one that establishes the identity link that the defendant participated in the crime. The opinion in Craig is particularly instructive for upholding the trial court's denial of the motion to suppress in this case:
It would be anomalous for us to hold that even though a co-defendant's uncorroborated testimony can prove guilt beyond a reasonable doubt, the confession of a co-defendant that he and the suspect committed the crime is insufficient to establish probable cause. We do not mean that any co-defendant confession, however outlandish, will suffice to establish probable cause irrespective of the circumstances. For example, the confession of a mental patient that he and the suspect, aided by an army of little green men, committed the crime clearly would not pass muster. Nor would a co-defendant's confession establish probable cause as to the suspect if the confession so far contradicted known facts that no reasonable officer would believe it. But that will not be the case with most co-defendant confessions, and it is not what we have here. . . .
Newsome unequivocally incriminated not only Craig but also Newsome himself, thus bringing to bear notions of reliability associated with statements against penal interest. (Citation omitted). That Newsome incriminated himself as well as Craig ensured that his statements about Craig were "reasonably trustworthy information," which is all probable cause requires. See, e.g., Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir.1996) ("Probable cause does not require overwhelmingly convincing evidence, but only `reasonably trustworthy information.'").
It might be argued that the notions of reliability associated with statements *487 against interest are undercut by the interest that co-defendants have in shifting relative blame among themselves. Anyone involved with the criminal justice system knows that a confessing co-defendant, although admitting guilt of the basic crime, will often claim that a particularly serious or blameworthy act during the crime was done not by him but by a colleague in crime. For example, it was in Newsome's best interest to say that Craig rather than he was the shooter in this robbery-murder, and that is what he did say. However, even when a co-defendant's confession seeks to shift some of the blame to another, the co-defendant's admission of guilt to the core crime is enough indication of "reasonably trustworthy information" to satisfy probable cause. Look at it this way. Even if the detectives should have assumed for some reason that Newsome and not Craig was the shooter, the result is the same. For purposes of determining whether there was probable cause to arrest Craig for a felony, it matters not whether he was the robber who shot or the robber who did not. Ordinarily, unless it is incredible or contradicts known facts to such an extent no reasonable officer would believe it, a co-defendant's confession that he and the suspect committed the crime can supply probable cause to arrest the suspect.

Craig, 127 F.3d at 1045 (emphasis supplied).
In this case, each co-defendant gave a statement in which each claimed the other acted alone in committing the robbery-murder, and each claimed a lack of foreknowledge that a robbery was going to occur. However, a firearm was used, and one of them had to bring the firearm to the scene. It is also significant that both co-defendants were seen fleeing from the scene shortly after the robbery and murders. The fact that both confessions were similar in the description of the sequence of events, and the fact that the description of events by each co-defendant was consistent with the sequence of events as described by the witnesses to the events immediately before and after the murders, all of which was known prior to arresting Leighty, makes the confession by Johnson inculpating Leighty "reasonably trustworthy information" for law enforcement to have probable cause to arrest Leighty.
For the above reasons, the trial court's denial of the motion to suppress Leighty's statements to law enforcement is affirmed.

Denial of the Use of a Witness Deposition
Leighty asserts the trial court erred in not allowing the use of the deposition of a witness, Tiffany Nieves, at trial in lieu of live testimony. Nieves is Leighty's girlfriend. Leighty was living with Nieves at her mother's house at the time of the murders.
Nieves' deposition was taken jointly by Leighty's attorney and Johnson's attorney, with the state attorney being present. During the deposition, Nieves was questioned about a discussion that occurred shortly after the murders. The murders were still being reported on television news broadcasts. Nieves and Leighty were at Johnson's home, along with Johnson and his wife, when a news broadcast displayed a composite picture of a suspect. The suspect drawing looked just like Johnson, and Johnson's wife commented so. According to Nieves, Johnson acted like he knew nothing about the murders at that time. However, there was a second occasion when the topic came up again at Johnson's house, and again all *488 four were present. According to the deposition transcript, Nieves testified:[2]
A. We just asked him [Thomas Johnson], you know, what happened. And Thomas said that Randy [Leighty] didn't do anything. I did it all. Randy didn't do anything. And Thomas cut off his goatee and stuff.
At little later in the deposition, Nieves testified:[3]
Q. Anything else said by Tommy during that conversation that you have not told us?
A. We asked him why did he do it. He said because they saw my face. That was it.
MR. BEERS: Asked who why he did it?
THE WITNESS: We asked Thomas.
BY MR. GERSHMAN:
Q. Before we go back over that conversation, if you can, instead of using the pronouns he, we or they, who was talking and what did the individual person say? Who said what?
A. Michelle and I asked Thomas why did he do it. And he said, Thomas said because they saw my face.
In the deposition Nieves also said that Leighty told her he had no involvement in the robbery or murders.
Both the State and Leighty attempted to subpoena Nieves to testify at trial, but were unsuccessful. Leighty filed a motion asking to use Nieves' deposition testimony in lieu of live testimony on a theory that she was Unavailable and her deposition testimony qualified as a hearsay exception as former testimony under section 90.804(2)(a), Florida Statutes. Leighty called the motion up for a hearing during trial and conceded that the deposition did not comply with Florida Rule of Criminal Procedure 3.190(j). Leighty also conceded the supreme court has held in Rodriguez v. State, 609 So.2d 493 (Fla.1992), that a deposition that fails to comply with rule 3.190(j) is not admissible at trial as substantive evidence, despite the exception for hearsay allowed by section 90.804(2)(a), Florida Statutes. Leighty argued to the trial court that due process and the right to trial guaranteed by the Sixth and Fourteenth Amendments are constitutional rights and protections which trump state court evidentiary rules, citing Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The trial court denied the motion relying on Rodriguez.
In Chambers, police officers confronted an angry crowd, which caused gun fire to be exchanged from someone in the crowd and the officers. Chambers was one of the members of the crowd hit by gunfire from law enforcement. An officer was killed in the gunfire, and Chambers was charged with that murder. There was evidence that Gable McDonald admitted to more than one person that he was the one who fired the shots which fatally killed the police officer. McDonald gave a sworn statement to that effect to the attorneys representing Chambers, who turned it over to law enforcement. McDonald was arrested. At the preliminary hearing subsequent to his arrest, McDonald testified and repudiated the confession, contending that he made the story up after being assured by a minister who knew Chambers that McDonald would not go to jail and that he would share the proceeds of a civil suit Chambers intended to bring against the city for being shot. As a result of McDonald's testimony at the preliminary hearing, charges were dropped against *489 him, and the murder prosecution proceeded against Chambers.
At trial, Chambers introduced the testimony of a witness who claimed he saw McDonald fire the shots which hit the slain officer. Chambers also attempted to call McDonald as an adverse witness, which would allow Chambers to confront him with his confession, but the trial court refused to treat McDonald as an "adverse witness" because McDonald's statements never accused Chambers of doing anything wrong. Chambers also attempted to introduce testimony from witnesses who heard McDonald admit he was the one who killed the officer, as well as the written statement McDonald gave to the attorneys representing Chambers. However, the Mississippi rules of evidence at that time allowed an exception to hearsay for statements against interest only if the statement was against proprietary interest, not penal interest. Chambers contended on appeal before the Supreme Court that constitutional rights and protections must prevail over state court rules of evidence, where the rules of evidence in application thwart constitutional rights and protections. Chambers specifically contended the Mississippi rules of evidence precluded a fair trial that would allow him to present exculpatory evidence.
In reaching its decision in Chambers, the Supreme Court stated:
The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. Mr. Justice Black, writing for the Court in In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948), identified these rights as among the minimum essential of a fair trial:
`A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense  a right to his day in court  are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.'
Chambers, 410 U.S. at 294, 93 S.Ct. 1038. The high court went on to state:
Few rights are more fundamental than that of an accused to present witnesses in his own defense. (Citations omitted.) In the exercise of this right, the accused, as is required by the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental *490 standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the State in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.
Chambers, 410 U.S. at 302-03, 93 S.Ct. 1038 (emphasis added.)
In Chambers the court found two things to be significant, which were part of the "facts and circumstance of this case," to which the court alluded. First, McDonald was available to testify at trial and be cross-examined. Second, the court determined that the hearsay statements at issue were "originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." Chambers, 410 U.S. at 299, 93 S.Ct. 1038.
In arguing his motion to use Nieves' deposition testimony, Leighty acknowledged that the holding of Rodriguez was against him. The facts of Rodriguez involved a situation in which the defense sought to introduce the deposition testimony of a witness, Montalvo, who stated that the victim who died from a shooting described the shooter as a "little fat one," which did not match Rodriguez's physical characteristics. Previous to his deposition, Montalvo told law enforcement that the victim gave no description of the shooter prior to dying at the scene. For trial, Montalvo had been served with a "standby subpoena" to appear on Monday, January 22, 1990. The trial did not begin until the following Monday, and defense counsel failed to notify Montalvo that the trial had been delayed a week. Montalvo left town and was not available to testify at trial. Although Montalvo had no testimony to offer that someone other than Rodriguez had confessed to the crime, his deposition testimony was exculpatory in that the victim's description of the shooter was very dissimilar to the physical characteristics of Rodriguez.
In reaching its holding in Rodriguez, our supreme court relied upon State v. James, 402 So.2d 1169 (Fla.1981), and its progeny, which involved situations where the state tried to use deposition testimony as substantive evidence against the defendant. In James, as well as its progeny, it was the state attempting to use deposition testimony as substantive evidence against the defendant. James and its progeny stand for the proposition that such use of depositions violates the defendant's right of confrontation since the defendant was not present during any of the depositions. In Rodriguez, it was the defendant attempting to use deposition testimony as exculpatory evidence. The supreme court framed the issue as: "We are presented with the question of whether a deposition is admissible as substantive evidence, under section 90.804(2)(a) of the evidence code, when, at the time of its taking, opposing counsel is not alerted by compliance with Rule of Criminal Procedure 3.190(j) that the deposition may be used at trial." Rodriguez, 609 So.2d at 498 (emphasis added). The court also stated, ". . . Rule of Criminal Procedure 3.190(j) was enacted to assure that both parties have an opportunity and motive to fully develop deposition testimony before it can be used as substantive evidence in a criminal case." Id. at 499. If the purpose of the rule is "to assure that both parties have an opportunity and motive to fully develop deposition testimony before it can be used as substantive evidence in a criminal case," it would appear that the heart of the matter is the *491 ability of the party against whom the evidence is being introduced to have an adequate ability to cross-examine the witness and test the reliability of the evidence.
Research reveals no Florida cases which discuss or analyze whether issues of due process and the Sixth Amendment right to trial discussed in Chambers will sometimes override the holding of Rodriguez. Moreover, the court could find only six cases which discuss Chambers in the context of Florida's hearsay exception for statements against interest under section 90.804(2)(c).[4] Only one of those cases is instructive for this case.
Curtis v. State, 876 So.2d 13 (Fla. 1st DCA 2004), is somewhat factually similar to Chambers. Curtis was tried for the shooting death of Mary Ann Stephens. Prior to Curtis's trial, a juvenile, Brenton Butler, was tried for the same crime. Prior to the Butler trial, Butler gave a confession to law enforcement admitting he committed the murder. At his trial, Butler repudiated the confession and the jury apparently believed him and acquitted him.
Curtis attempted to admit into evidence at his trial the confession of Butler. The trial court would not allow it because it did not qualify as an admission against penal interest under section 90.804(2)(c), Florida Statutes, since Butler was available to testify at Curtis's trial after being acquitted. Relying on Chambers, the First District reversed the trial court, stating:
The general principle that state evidence rules must, in some instances, yield to greater principles established by the Constitution has been applied specifically to require the admission of a confession by a third party. In Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Supreme Court concluded that the defendant should have been allowed to present evidence that someone else had confessed to the crime.
The [Supreme] Court emphasized that, although McDonald's confessions were hearsay, they were made and subsequently presented at trial "under circumstances that provided considerable assurance of their reliability." Chambers, 410 U.S. at 300, 93 S.Ct. 1038, 35 L.Ed.2d 297. In support of this conclusion, the Court listed four factors that supported the reliability of McDonald's confessions: (1) each of the confessions [were] made spontaneously to a friend shortly after the murder was committed; (2) the confessions were corroborated by other evidence; (3) the confessions truly were statements against McDonald's penal interest; and (4) McDonald was available to testify and could have been cross-examined by counsel for the State. (Citation omitted.)
Curtis v. State, 876 So.2d at 19-20.
Another instructive case is Garcia v. State, 816 So.2d 554 (Fla.2002). Rolando Garcia and Manuel Pardo, Jr. were indicted for four episodes of double murders. Pardo was tried first. At trial, Pardo, a former police officer, took the stand and admitted he intentionally killed the victims, but also testified Garcia had no involvement in the murders. Before Garcia's trial, Pardo invoked his Fifth Amendment rights and refused to testify at Garcia's trial. During the guilt phase of Garcia's trial, Garcia attempted to admit into evidence Pardo's former testimony during Pardo's trial to prove that he had nothing to do with the murders. Garcia argued to the trial court that Pardo's *492 former sworn testimony was admissible under section 90.804(2)(a), Florida Statutes, as a former testimony exception to hearsay. The trial court denied admission of the former testimony because Pardo and Garcia were not tried together, so the State did not have the same motive in cross-examining Pardo that it would have if Garcia had been tried at the same time. The supreme court concluded that "section 90.804(2)(a) does not require an identical motive [for cross-examination], but only a `similar motive'." Garcia, 816 So.2d at 564. The supreme court noted that
In this case, the State's cross-examination of Pardo at his own trial reveals that the State had substantial doubts about the credibility and reliability of Pardo's testimony, including the testimony about Garcia's lack of involvement, and the State subjected Pardo to rigorous cross-examination on these subjects. Thus, the State had a similar motive in cross-examining Pardo, which was to discredit Pardo's testimony and show it to be not worthy of belief.
. . . .
In this case [Garcia's trial], to prevent the jury from hearing the prior recorded testimony of Pardo, which the State subjected to cross-examination, is to apply the hearsay rule "mechanistically to defeat the ends of justice." Chambers v. Mississippi (full citation omitted).
Garcia, 816 So.2d at 564-65. The supreme court stated, ". . . the failure to allow the jury to hear this [Pardo's] testimony deprived the jury of important additional information that could have been critical to assessing Garcia's guilt." Garcia, 816 So.2d at 565. The supreme court reversed the trial court on the principle that the state court rules of evidence were applied in a way to thwart the constitutional right to due process and a fair trial.
The admission of Nieves' deposition testimony would have been hearsay within hearsay. However, such hearsay is admissible if each component conforms to an exception to the hearsay rule. See § 90.805, Fla. Stat. The deposition transcript itself would have to qualify under the former testimony exception to hearsay. Johnson's admission of guilt and his statement that Leighty did not participate would have to qualify as a statement against interest. Johnson's statements to Nieves do qualify as a statement against interest without much discussion.[5] Given the fact that Nieves' deposition was taken jointly by both co-defendant's with the state attorney being present, Leighty has argued that her deposition testimony qualifies for the former testimony exception to hearsay because the state had "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." § 90.804(2)(a), Fla. Stat. However, for Nieves' deposition transcript to qualify for the former testimony exception to the hearsay rule, there is the requirement that it be a "deposition taken in compliance with the law." Id.
The problem remains with the failure of the deposition to comply with the requirements of Rule of Criminal Procedure 3.190(j). More importantly, the question becomes, in the factual context of this case, do the constitutional principles espoused by Chambers override the exclusion of Nieves' deposition as substantive exculpatory evidence for failure to comply with Rule 3.190(j)?
Using the Chambers analysis of four factors suggested by the First District in Curtis, this court concludes that the trial court properly prohibited the use of *493 Nieves' deposition testimony as substantive evidence. While it is true that Johnson's admission (confession) satisfies three of the four factors,[6] the fourth, and perhaps most critical factor, was not satisfied: Johnson was not available for cross-examination at Leighty's trial. In the context of Leighty's trial, the state was never afforded the opportunity to cross-examine Johnson on his assertion that Leighty had nothing to do with the robbery or murders.
As stated above, if the purpose of Rule 3.190(j) is "to assure that both parties have an opportunity and motive to fully develop deposition testimony before it can be used as substantive evidence in a criminal case,"[7] it would appear that the heart of the matter is the ability of the party against whom the evidence is being introduced to have an adequate ability to cross-examine the witness and test the reliability of the evidence. The problem with a discovery deposition is the function of the discovery deposition process itself: to discover what evidence may be available for use at trial. When one side takes a discovery deposition, the opposing side frequently does not ask questions in an attempt not to further educate the side taking the deposition. Thus, although the opposing side has a legal right to cross-examine, in practice cross-examination is routinely waived. In part that waiver occurs because it is assumed that under the rules of procedure, the discovery deposition cannot be used as substantive evidence.
Our supreme court recently issued an opinion which discusses the fact that the rule authorizing discovery depositions in criminal cases was never intended to create situations where a discovery deposition could be used as substantive evidence. In State v. Lopez, 974 So.2d 340 (Fla. 2008), the supreme court addressed whether deposition testimony could meet the requirements of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), to allow such testimony to be used as substantive evidence at trial. In analyzing a Sixth Amendment right of confrontation issue, the supreme court observed, "Florida Rule of Criminal Procedure 3.220(h) was not designed as an opportunity to engage in adversarial testing of the evidence against the defendant, nor is the rule customarily used for the purpose of cross-examination." Id. at 347. Later in the opinion, the court stated:
Additionally, the purpose of a discovery deposition is at odds with the concept of meaningful cross-examination. Often discovery depositions are taken for the purpose of uncovering other evidence or revealing other witnesses. As this Court has explained, the fundamental distinctions between depositions taken pursuant to Florida Rule of Criminal Procedure 3.190(j) (Motion to Take Deposition to Perpetuate Testimony) and those taken under 3.220 are:
Depositions taken pursuant to rule 3.190 are specifically taken for the purpose of introducing those depositions at trial as substantive evidence. Depositions taken pursuant to rule 3.220, on the other hand, are for discovery purposes only and, for a number of reasons, assist in shortening the length of trials. How a lawyer prepares for and asks questions of a deposition witness whose testimony may be admissible at trial as substantive *494 evidence under rule 3.190 is entirely different from how a lawyer prepares for and asks questions of a witness being deposed for discovery purposes under rule 3.220. In effect, the knowledge that a deposition witness's testimony can be used substantively at trial may have a chilling effect on a lawyer's questioning of such a witness.
State v. Green, 667 So.2d 756, 759 (Fla. 1995). A defendant cannot be "expected to conduct an adequate cross-examination as to matters of which he first gained knowledge at the taking of the deposition." State v. Basiliere, 353 So.2d 820, 824-25 (Fla.1977). This is especially true if the defendant is "unaware that this deposition would be the only opportunity he would have to examine and challenge the accuracy of the deponent's statements." Id. at 824.
Lopez, 974 So.2d at 350.
In this case, neither side anticipated that Nieves would not be available to testify, and in fact, both sides expected she would be available since she was Leighty's girlfriend. To the extent the state could anticipate that Nieves would attempt to help Leighty with her testimony, there is an obvious issue of credibility because of her romantic involvement with Leighty. But in the context of a discovery deposition, there could easily be other information for attacking the credibility of Nieves about which the state did not want to educate Leighty. Without notice that the defense was intending to use Nieves' deposition testimony as substantive evidence, the state did not have an opportunity and motive to fully develop her deposition testimony by rigorous cross-examination. Thus, the state was also deprived of the opportunity to test the reliability of her exculpatory testimony.
Chambers stands for the proposition that constitutional rights and protections trump state court rules of evidence which exclude evidence only when the reliability of that evidence can be tested. Under the facts of this case, the state did not have a fair opportunity to test the reliability of Johnson's assertion that Leighty had nothing to do with the robbery and murders, and the state did not have a fair opportunity to test the reliability of Nieves' testimony that Johnson said those things. Thus, the trial court properly excluded the use of Nieves' deposition transcript as substantive exculpatory evidence in this case even after considering the principles announced in Chambers.
Judge Farmer raises a very legitimate concern in his dissent. Effectively our decision in this case, which follows the precedent of our supreme court in Rodriguez, holds that a court-made rule ends up barring the admission of exculpatory deposition testimony that at the time of trial was not available in any other way. Judge Farmer further contends that use of depositions in criminal cases should be no different than in civil cases. He is correct that the current rule regarding use of criminal discovery depositions does allow lawyers to play tactical games. But the stakes in a criminal case are different from the stakes in a civil case, and unfortunately, the practical reality is that the criminal justice system must operate differently from the civil justice system. It is up to our supreme court to decide if the holding in Chambers should trump the holding in Rodriguez when exculpatory evidence is the issue.
For the reasons stated above, the rulings of the trial court, as well as the judgments and sentences are affirmed.
WARNER, J., concurs.
FARMER, J., dissents with opinion.
*495 FARMER, J., dissenting.
I think Chambers[8] trumps rule 3.190(j). At least it ought to. Indeed, the Florida Supreme Court thinks that Chambers trumps some contrary state law. See Garcia v. State, 816 So.2d 554, 565 (Fla.2002) (saying that § 90.804(2)(a) may not be applied "mechanistically to defeat the ends of justice," quoting Chambers).
Otherwise a court-made rule merely providing a procedure for depositions ends up barring the admission of exculpatory deposition testimony not available now in any other way or at any other time. I know, that is precisely what the Supreme Court itself has done in Rodriguez v. State, 609 So.2d 493 (Fla.1992). But the court there did not consider Chambers, and the witness in Rodriguez had actually been available to testify at trial, but defense counsel simply failed to make a timely effort to speak to the witness before the witness left town after the case was not reached on the calendar. Here the excluded evidence is a witness exonerating defendant of the shooting by evidence originating from a co-defendant admitting that he alone shot the victims.
I see no problem in meeting the requirements of section 90.804(2)(a). Are we suggesting that it is acceptable for the State to hide from knowing which defendant actually shot the victims? The state had an absolutely identical motive to question this witness because her testimony bore directly on which one of the two robbers shot the victims. The deposition was surely "taken in compliance with the law" by which it is meant the law applying to depositions generally. Notice was given, both sides were present, the witness was placed on her oath, both sides had an equal opportunity to question her, and a court reporter took down everything said and certified its accuracy.
I can think of no defensible basis for two different kinds of depositions in criminal procedure. As in civil cases any deposition should be possible as substantive evidence  at least when the Confrontation Clause otherwise permits. Having this dual system of deposing witnesses enables the kind of invidious process occurring in this case. As the fount of all process and justice, the State should not create rules of procedure encouraging lawyers on both sides to hide from the truth in criminal depositions by deliberately evading meaningful questioning of the full extent of the witness's knowledge and candor. If the system is going to go to the trouble of allowing pretrial depositions of witnesses, the only purpose must be to dig out the full extent of the truth.
Even so, the mere fact that lawyers in criminal cases play tactical games at discovery depositions hardly makes the testimony of all witnesses universally unreliable as substantive evidence. And even if both sets of lawyers forbore from searching examination because neither wanted to alert the other as to how the witness might respond or how believably, that does not appear to be much of a reason to convict the wrong man of the most serious of crimes by barring evidence explicitly laying blame elsewhere.
I dissent from the denial of a new trial.
NOTES
[1] Johnson also filed a motion to suppress his pretrial statement to law enforcement. The trial court entertained both motions, and the order entered denied both motions.
[2] Deposition of Tiffany Nieves taken on November 18, 2003, page 19, lines 18-21.
[3] Deposition of Tiffany Nieves taken on November 18, 2003, page 19, lines 25 to page 20, line 12.
[4] Curtis v. State, 876 So.2d 13 (Fla. 1st DCA 2004); Carpenter v. State, 785 So.2d 1182 (Fla.2001); Jones v. State, 709 So.2d 512 (Fla. 1998); Jones v. State, 678 So.2d 309 (Fla. 1996); Hill v. State, 549 So.2d 179 (Fla.1989); Card v. State, 453 So.2d 17 (Fla.1984).
[5] There was corroborating evidence to show the trustworthiness of the statement.
[6] The admissions were spontaneous to a spouse and friend shortly after the murders; the admissions were corroborated by other evidence; and the admissions were truly statements against penal interest.
[7] Rodriguez, 609 So.2d at 499.
[8] Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (where constitutional rights directly affecting ascertainment of guilt are implicated by exclusion of exculpatory evidence critical to defense under state rule regarding hearsay evidence, state rule may not be "applied mechanistically to defeat ends of justice").