WELLS, Chief Judge.
Jules Ducas appeals from his convictions and sentences on three counts of armed robbery and one count of armed burglary. We affirm the robbery convictions and sentences, but reverse the burglary conviction because the underlying robberies took place in an area of a drug store that was open to the general public at the time Ducas entered it with the intent to commit an offense therein.
In the early morning hours of March 2, 2008, Ducas entered a CVS Pharmacy located in Miami-Dade County. After taking an item from a store shelf, Ducas approached the check-out counter, pulled a gun, and demanded money. The clerk refused, telling Ducas that the cash register could not be opened without a tender.
After the clerk refused to give Ducas money from his own wallet so that the register could be opened, Ducas turned to two women who had just entered the store, brandished a gun and demanded money. The women complied; Ducas gave the money to the store clerk behind the checkout counter; the clerk opened the register; and Ducas took the money and fled.
Ducas subsequently was arrested, charged with and convicted on three counts of armed robbery and one count of burglary related to these events. He appeals from these convictions and the sentences raising three claims. First, Ducas claims that the trial court erred in refusing to allow him to introduce as substantive evidence the discovery depositions of the two women robbed at the store to establish that they had identified someone (purportedly someone other than Ducas) as their assailant. Second, Ducas claims that the trial court erred in allowing the State to introduce hearsay evidence that inferred that Ducas had touched the counter near the cash register where his palm print was found. Third, Ducas claims that the trial court erred in denying his motion for judgment of acquittal on the armed burglary count because the events at issue occurred in a public place. We find no merit in Ducas’ first two arguments, but agree that a verdict should have been directed on the burglary count.

1. The discovery depositions of the two female robbery victims.

Ducas claims that the trial court erred in refusing to allow him to introduce as substantive evidence the discovery depositions of the two women robbed at the CVS Pharmacy. According to Ducas, after it became evident during trial that these two witnesses could not be located, the State intentionally elicited inadmissible hearsay evidence from a police officer that these two women had been unable to identify anyone as their assailant during a photo lineup despite knowing that the women had in fact identified someone. Ducas claims that under the circumstances, he should have been allowed to use the discovery depositions of these women for two reasons: first, because the State opened the door to admission of these depositions when it adduced inadmissible hearsay tes *1215 timony that these women were unable to identify anyone from a photo lineup, and second, because the decision in Chambers v. Mississippi 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), mandates admission of this purportedly exculpatory evidence.[1]
The testimony which gives rise to these arguments came from Detective Michelangelo Rojas who conducted a photo lineup with each of the three victims involved in this case. According to Detective Rojas, the store clerk who was robbed at the CVS Pharmacy identified Ducas’ photograph as that of the individual who took money from the store’s cash register at gunpoint. However, the two female robbery victims were not, according to Detective Rojas, able to identify anyone as their assailant:
Q. And when you met with them, did you present them with the same photographic lineup?
A. Yes.
Q. Okay. And were they able to pick anybody out?
A. No, they weren’t.[2]
Ducas claims that this hearsay testimony opened the door to admission of the hearsay discovery depositions of the two female victims to show that they did in fact identify someone. We reject this argument because it provides no basis for admitting these depositions. More specifically, even if the detective’s testimony had opened the door to further hearsay testimony on the subject of these witnesses’ identification or non-identification of Du-cas, Ducas was not precluded from adducing testimony on this issue below. To the contrary, he pursued this line of inquiry on cross-examination but concededly abandoned the effort for tactical reasons.[3] Du-cas also acknowledged below that even if these otherwise inadmissible discovery depositions were to be admitted as substantive evidence, it would not be on some opening the door theory but under the holding in Chambers v. Mississippi:
The legal basis for my argument is three or four fold. First of all, it’s clear in and the Court already ruled that Florida doesn’t allow the introduction of depositions as substantive evidence ... [ujnless Rule 3.190 is comported with.... [T]hat wasn’t done.... However, [just as] in Chambers and Mississippi [sic], there are times when a court due to the due process clause and fundamental fairness will overlook or set aside a State’s evidentiary and/or procedural rules when justice due process demand.
We disagree with this argument as well.
In Chambers, the defendant sought to call as an adverse witness, and to intro *1216 duce the -written statement of, another individual who had confessed to committing the murder for which Chambers was being tried. Chambers was not allowed to call this witness as an adverse witness because the court deemed the witness not adverse; and, he was not allowed to introduce the hearsay confession of this witness because it did not come within the exception to Mississippi’s hearsay rule, which allowed only statements against proprietary, but not penal, interest. Concluding that on these facts and under these circumstances Chambers’ due process right to a fair trial had been violated, the Court stated:
Few rights are more fundamental than that of an accused to present witnesses in his own defense. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers’ defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.
We conclude that the exclusion of this critical evidence, coupled with the State’s refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal ang diminution in the respect traditionallg accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.
Chambers, 410 U.S. at 302-03, 93 S.Ct. 1038 (citations omitted) (emphasis added).
Because our supreme court, in Rodriguez v. State, 609 So.2d 493, 498 (Fla.1992), has held that a discovery deposition, like the one at issue here, that does not comply with Rule 3.190(i) of the Florida Rules of Criminal Procedure is not admissible as substantive evidence, the question becomes whether the constitutional principles espoused by Chambers override the exclusion of these discovery depositions as substantive exculpatory evidence for failure to comply with Rule 3.190(f). They do not.
They do not for at least two reasons. First, the hearsay testimony that Ducas wants to introduce is nothing akin to the murder confession against penal interest involved in Chambers. The hearsay statements at issue here are not contrary to the interests of either witness and concededly are equivocal on the issue of identification [4]:
*1217 QUESTION: Then what did you do? What happened? Tell me.
ANSWER: Whichever one I thought it was, I don’t remember. It is like the number next to it. I told him. Then Allison [the other victim] told him what number she did.
QUESTION: Did he ever tell you if you were not sure, don’t pick somebody out?
ANSWER: Yeah. I mean he was like, no, I think. I remember him saying in this lineup these pictures.
QUESTION: Okay. All right. And you picked somebody out?
ANSWER: Yes.
QUESTION:.... How long did it take you to pick somebody out?
ANSWER: After, I mean, I thought I knew the face like in my head. I was like prepared to see something that I recognized right away and I didn’t. So, you know, I kept looking at them back and forth, then cancelling out people. I was pretty sure it wasn’t. So probably took, you know, two — three minutes, but I wasn’t in there for long period of time
QUESTION: Okay. Like, what did you tell him when you picked the person out?
ANSWER: I just said I think the number whatever.
QUESTION: You think it is him?
ANSWER: Yes.
Second, the reliability of this evidence cannot be tested. As our sister court in Leighty v. State, 981 So.2d 484, 494 (Fla. 4th DCA 2008), recently stated, “Chambers stands for the proposition that constitutional rights and protections trump state court rules of evidence which exclude evidence only when the reliability of that evidence can be tested.” Discovery depositions, such as those taken here, are neither “intended as an opportunity to perpetuate testimony for use at trial” nor “designed as an opportunity to engage in adversarial testing of the evidence.” State v. Lopez, 974 So.2d 840, 347 (Fla.2008). Moreover, when a discovery deposition is taken, the testimony adduced often goes untested in an effort “not to further educate” the other side. Thus, without notice that Ducas intended to use these witnesses’ testimony as substantive evidence, the State had neither the motive nor the opportunity to develop their testimony further to test its reliability. Leighty, 981 So.2d at 493-94; see also Rodriguez, 609 So .2d at 499 (“Rule of Criminal Procedure 3.190[ (i) ] was enacted to assure that both parties have an opportunity and motive to fully develop deposition testimony before it can be used as substantive evidence in a criminal case.”). The depositions were not admissible under the holding in Chambers. See Leighty, 981 So.2d at 494 (citing Chambers and Rodriguez, finding that the criminal discovery deposition in that case, which failed to comply with Rule 3.190’s provision concerning a motion to perpetuate testimony, was not admissible as substantive evidence at trial).

2. The palm print testimony

We also reject Ducas’ claim that the trial court reversibly erred in allowing a police officer to testify that while investigating these crimes, he focused on those areas inside the CVS Pharmacy where he *1218 “learned” that the crimes at issue had taken place. We do so first because this argument was not preserved for review by an appropriate contemporaneous objection when the testimony was adduced and second because the testimony was not adduced to prove the truth of the matter asserted — that is, that this defendant committed this crime. Rather, the testimony was adduced to establish why this witness acted as he did and served only to confirm the testimony of another witness and a video as to where the crimes at issue took place. No reversible error on this claim has been demonstrated.

3. The burglary count

While we find no reversible error in the trial court’s decision to preclude use of the female victims’ discovery depositions as substantive evidence or in the testimony regarding the location of these crimes, we do find that the court below erred in failing to direct a verdict in Ducas’ favor on the burglary count.
Burglary is currently defined (for crimes committed after July 1, 2001) as entering a dwelling, structure, or conveyance with the intent to commit an offense therein, unless the premises at the time are open to the public or the defendant is licensed or invited to enter:
(l)(b) for offenses committed after July 1, 2001, “burglary” means:
1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
a. Surreptitiously, with the intent to commit an offense therein;
b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.
§ 810.02(l)(b)l.-2., Fla. Stat. (2008) (emphasis added).
It has long been recognized that the portion of this definition which follows the word “unless” delineates affirmative defenses to this crime, and that entry onto premises open to the public “is a complete defense” to a charge of burglary. See Miller v. State, 733 So.2d 955, 957 (Fla.1998) (emphasis added) (addressing the 1993 version of section 810.02(1) of the Florida Statutes defining burglary).[5]
Despite appearing unequivocal regarding the application of this defense in Miller, the Florida Supreme Court addressed this defense nearly three years later in Johnson v. State, 786 So.2d 1162 (Fla. *1219 2001). This time, the court acknowledged that “complete” in the context of this defense did not necessarily equate with “absolute” and that this defense does not necessarily preclude a burglary charge when a crime takes place in a private or closed area of a place that is generally open to the public:
[In Miller, this] Court ... held that “if a defendant can establish that the premises were open to the public then this is a complete defense” to a burglary charge. However, it was never argued in Miller that although the store was open to the public, the area behind the counter was not open to the public. Hence, the Miller opinion did not address the question of whether the area behind the counter could be “closed” to the public.
We conclude that the question of whether the area behind the counter was open to the public is a question of fact for the jury to decide.
Johnson, 786 So.2d at 1168, 1164 (citation omitted).
More recently, our sister court in Colbert v. State, 49 So.3d 819 (Fla. 4th DCA 2010), considered application of Johnson to a case where a robber smashed a jewelry store display case and stole its contents. Rejecting the claim that the inside of the display case was not. a public area, the court reconfirmed that while the Florida Supreme Court had recently examined the “open to the public” defense in Johnson, the exception to the “open public area” defense recognized in that case applied “only where there is a factual dispute as to whether the area in question is open to the public.” Id. at 822. There, as here, the area was indisputably open to the public.
Because it is undisputed that the CVS Pharmacy was open to the public and because there was no evidence presented below that Dueas was in a restricted area of the store when he committed the underlying robberies, he was entitled to the complete defense to burglary afforded by section 810.02(l)(b)l. On these facts, the trial court should have granted his motion for judgment of acquittal as to the burglary charge. We therefore reverse his conviction and sentence for burglary, and affirm his convictions and sentences on the robbery counts.
Affirmed in part; reversed part; and remanded for further proceedings consistent with this opinion.

. We note that Ducas does not complain that the court below erred in refusing to grant a continuance to allow him to locate these two witnesses.

. This testimony drew no objection from Du-cas on any ground.

. On cross-examination, Ducas asked, without objection, only a single question regarding these victims' identification (or non-identification) of their assailant:
Q. Now, it's your testimony here that the two ladies, Danielle and Allison, that you had the lineups done with, is it your testimony here it’s not that they didn’t pick somebody out, that they could not pick someone out? Did they select someone or not?
A. They did not select somebody, neither one.
He asked no further questions because Detective Rojas’ deposition testimony concededly was consistent with his trial testimony; because this witness concededly could not be impeached with the testimony of a third person; and concededly because it made no sense to inquire further, observing "if you don’t have impeachment material to impeach that witness, you’re stuck with the answer that you’re given.”

. Ducas’ counsel conceded that it was not possible to determine who was identified or if, as Detective Rojas apparently believed, anyone was identified:
[By Ducas’ Counsel]: And we’re not saying Rojas is [a] liar or he intentionally lied, we don't know that's the point. These girls believe that they looked, each individually, *1217 at lineup photographic sixpacks containing Mr. Ducas and potentially cancelled him out, said it wasn't him, picked somebody out; and we have no idea what their conclusions are or why they came to that.

. This statute was amended in 2001 in response to Delgado v. State, 776 So.2d 233 (Fla.2000), wherein the Florida Supreme Court receded from several of its prior decisions which had found that the invitee/licensee affirmative defenses failed where the victim withdrew consent to remain on the premises, holding that these defenses, like the "open to the public” defense, was "a complete defense to the charge of burglary.” Id. at 236.
In direct response to this decision, the Florida Legislature amended the definition of "burglary” to provide express exceptions to the invitee and licensee affirmative defenses. See § S10.02(l)(b)2., Fla. Stat. (2008); see also § 810.015(l)-(6), Fla. Stat. (2008) (stating that Delgado was decided “contrary to legislative intent”; that "it is not necessary for the licensed or invited person to remain in the dwelling, structure, or conveyance surreptitiously”; that it is the Legislature's intent that "consent remain an affirmative defense to burglary and that the lack of consent may be proven by circumstantial evidence”; and that it is the intent of the Legislature that Delgado "be nullified”).